## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Brent Michael Woody,

                          Plaintiff,

v.

United States Federal Bureau of Prisons, a
United States Agency,

Thomas R. Kane, Ph.D., in his official
capacity as Acting Director of the Federal
Bureau of Prisons,

Dr. Deborah G. Schult, in her official
capacity as the Assistant Director for the
Health Services Division of the Federal
Bureau of Prisons,

Mitchel Holliday, RD, USPHS, in his official
capacity as the Nutrition Specialist with the
Health Services Division of the Federal
Bureau of Prisons,

Sara M. Revell, in her official capacity as the
Regional Director of the North Central
Region of the Federal Bureau of Prisons,

Paul Harvey, M.D., in his official capacity as
the Regional Medical Director for the North
Central Region of the Federal Bureau of
Prisons,

Leann LaRiva, in her official capacity as the
Warden of Federal Medical Center-
Rochester,

Dr. Sheila Hadaway, in her official capacity
as the clinical director of Federal Medical
Center-Rochester,

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**Civil File No. 16-CV-862 (DWF/BRT)**

---

Dr. Lon Krieg, in his official capacity as a
treating physician at Federal Medical Center-
Rochester,

Kathy Mayhew, in her official capacity as a
dietician at Federal Medical Center-
Rochester.

                    Defendants.

## INTRODUCTION

1.      This lawsuit concerns the Defendants Federal Bureau of Prisons (BOP) and

its employees' ("Defendants") failure over the past four years to provide Plaintiff Brent

Woody with adequate nutrition and care to treat his medical condition and to

accommodate his disability.  As a result of Defendants' continued refusal to provide

needed nutrition and care, Plaintiff has suffered significant damage to his health.

2.      Defendants' failure to provide Plaintiff with adequate nutrition and care

constitutes cruel and unusual punishment in violation of the Eighth Amendment of the

United States Constitution.  Moreover, Defendants' failure to reasonably accommodate

Plaintiff's disability constitutes discrimination in violation of Section 504 of the Federal

Rehabilitation Act (29 U.S.C. § 794(a)).

3.      Plaintiff seeks declaratory and injunctive relief as well as statutory

attorneys' fees and expenses.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over Plaintiff's case pursuant to 28 U.S.C.

§ 1331 because this is an action arising under the laws of the United States.  Plaintiff

seeks relief to redress the deprivation of rights secured by the Eighth Amendment of the United States Constitution and Section 504 of the Federal Rehabilitation Act, 29 U.S.C. § 794.

5.     The Court has jurisdiction to issue a declaratory judgment pursuant to U.S.C. §§ 2201 and 2202.

6.     The Administrative Procedures Act, 5 U.S.C. § 702, waives any purported claim by Defendants of sovereign immunity from Plaintiff's claims under the Eighth Amendment of the United States Constitution and Section 504 of the Federal Rehabilitation Act, 29 U.S.C. § 794.

7.     Venue is proper within this District pursuant to 28 U.S.C. § 1391(b) because Defendants are located within this District and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

8.     Plaintiff Brent Woody is a person with a disability as that term is defined by Section 504 of the Rehabilitation Act.  Plaintiff has been diagnosed with Phenylketonuria (PKU).  Plaintiff is substantially limited in the major life activity of eating, and substantially limited in the major bodily function of protein metabolism.

9.     Defendant United States Federal Bureau of Prisons (BOP) is an agency of the United States Department of Justice (DOJ).  The BOP is authorized by the DOJ to maintain and operate the federal prison system.  The BOP operates the Federal Medical Center (FMC)-Rochester, an administrative security federal medical center.  The BOP

and its employees are therefore subject to the requirements of Section 504 of the Rehabilitation Act and its implementing regulations.

10.    Defendant Thomas R. Kane, Ph.D., is the Acting Director of the BOP.  As Acting Director, Dr. Kane oversees all BOP operations.

11.    Dr. Deborah G. Schult is the Assistant Director for the Health Services Division of the BOP.  Dr. Schult directs the BOP's Medical and Food Service programs, and oversees health care delivery and the proper preparation of nutritional meals for inmates in the BOP system.

12.    Defendant Mitchel Holliday, RD, United States Public Health Service (USPHS), is the Nutrition Specialist with the Health Services Division of the BOP Central Office, and the BOP's Chief Dietitian.  As Nutrition Specialist, Mr. Holliday helps develop and consult on individualized diets for inmates with medical issues who cannot consume the standard prison diet.

13.    Defendant Sara M. Revell is the Regional Director of the North Central Region of the BOP.  As Regional Director, Ms. Revell oversees BOP facilities in the North Central Region, including FMC-Rochester, and has responsibility for the health, safety, and welfare of inmates within the North Central Region.

14.    Defendant Paul Harvey, M.D., is the Regional Medical Director for the North Central Region of the BOP, which includes FMC-Rochester.  As Regional Medical Director, Dr. Harvey is responsible for overseeing the delivery of medical care in BOP facilities in the North Central Region, including FMC-Rochester.

4

15.     Defendant Leann LaRiva is the current Warden of FMC-Rochester.  She has served as Warden since October 18, 2015.  As Warden, Ms. LaRiva is responsible for the total operations of FMC-Rochester, including maintaining the health, safety, and welfare of inmates at the facility.

16.     Defendant Dr. Sheila Hadaway is the current Clinical Director at FMC-Rochester.  As Clinical Director, Dr. Hadaway oversees medical treatment for all inmates at FMC-Rochester.

17.     Defendant Dr. Lon Krieg is Plaintiff's primary treating physician at FMC-Rochester.

18.     Defendant Kathy Mayhew is a dietician who works for the BOP at FMC-Rochester.  Ms. Mayhew has the primary responsibility of creating and overseeing Plaintiff's PKU diets.

## EXHAUSTION

19.     Plaintiff has exhausted his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

20.     Plaintiff has completed the BOP grievance process two times.  Plaintiff filed his first administrative complaint (BP-9) on August 8, 2012.  This was received on August 9, 2012, and denied on August 21, 2012.  Plaintiff appealed this denial to the regional office by filing a BP-10 form.  The regional office received Plaintiff's appeal on September 17, 2012, and denied it on September 26, 2012.  Plaintiff appealed this to the central office (BP-11) on December 17, 2012.  This appeal was denied on July 25, 2013.

21.     Plaintiff repeated the administrative process in 2015.  Plaintiff filed his second BP-9 form on January 30, 2015.  This was denied on February 20, 2015, and Plaintiff received this denial on February 25, 2015.  Plaintiff appealed to the regional office by filing a BP-10 form on March 8, 2015.  This request was denied on March 13, 2015, and Plaintiff received this denial on March 25, 2015.  Plaintiff appealed to the central office by filing a BP-11 form on April 1, 2015.  This form was received on April 15, 2015, and rejected on May 28, 2015 because the form was illegible.  Plaintiff received this rejection on June 1, 2015, and refiled his BP-11 form on June 10, 2015.  This appeal was denied on February 22, 2016.

22.     Defendants have not told Plaintiff that he needs to exhaust any other administrative process regarding his PKU-related complaints.  Specifically, Defendants have not told Plaintiff that he needs to complete the Department of Justice Equal Employment Opportunity Office (DOJ EEO) Complaint Process set forth in 28 C.F.R. § 39.170. Defendants' handbook for inmates at FMC-Rochester does not contain any reference to the DOJ EEO Complaint Process. Defendants' Administrative Remedy Program Policy also does not contain any reference to the DOJ EEO Complaint Process.

**FACTS**

23.     Plaintiff Brent Woody is a 33-year-old-man who has been an inmate at FMC-Rochester since April 2012.  He is sentenced to remain in prison until 2024.

24.     FMC-Rochester is one of six Medical Referral Centers within the BOP system.  The Medical Referral Centers provide enhanced medical services and limited inpatient care for inmates with significant and complex medical needs.

25.     Plaintiff has been diagnosed with Phenylketonuria (PKU).  PKU is a rare genetic disorder where a deficient enzyme prevents the body from metabolizing the amino acid Phenylalanine (Phe).  Over time, high levels of Phe cause cognitive delays, mood disorders and other neurological problems.

26.     To treat PKU, individuals must receive a strict low protein diet to limit their Phe intake.  The diet precludes eating many typical food items such as meat, milk, and eggs.  Individuals with PKU must also receive a metabolic supplement that contains a source of dietary protein equivalents and other nutrients without Phe.

27.     Ideal Phe levels for individuals with PKU are 2-6 milligrams per deciliter (mg/dl), with levels up to 10 mg/dl considered good metabolic control.  Phe levels over 20 mg/dl are considered very poor metabolic control.

28.     Poor metabolic control and high Phe levels lead to irreversible brain dysfunction, inattentiveness, poor organization, decreased physical coordination, decreased processing speed, and, in some cases, severe cognitive deficits.

29.     On November 8, 2010, Plaintiff's treating physician, Dr. Dorothy K. Grange, and treating dietician, Laurie Sprietsa, wrote a letter regarding Plaintiff's PKU to the sentencing court for its consideration during sentencing.  Dr. Grange and Ms. Sprietsa wrote that they felt "strongly that Brent would not be able to maintain his good metabolic control in a prison environment" due to the significant difficulties of providing a PKU diet.

30.     Plaintiff's pre-sentencing report listed concerns with managing PKU as a factor that may warrant a departure from sentencing.  The report acknowledged that

control of PKU is extremely difficult and requires a special diet, medical food, and nutritional supplements.

31.     In response to these concerns, Defendant BOP Regional Medical Director Paul T. Harvey wrote a letter dated February 2, 2012 to Assistant U.S. Attorney Robert Livergood.  In his letter, Dr. Harvey wrote that the "BOP has the necessary staff and resources to manage Plaintiff's Phenylketonuria (PKU)."  Dr. Harvey assured Mr. Livergood that the BOP would provide Plaintiff with "timely and appropriate care."

32.     On February 3, 2012, Defendant Mitchel Holliday, Nutrition Specialist with the Health Services Division of the BOP Central Office, also wrote a letter to Assistant U.S. Attorney Robert Livergood regarding management of Plaintiff's PKU.  In his letter, Mr. Holliday wrote that there was "no reason" that Plaintiff would not be able to obtain a low-Phe diet within the BOP system, and that the goal of Plaintiff receiving timely and appropriate care would be "achieved."

33.     Based on these recommendations, Plaintiff was sentenced to 151 months in prison on March 5, 2012.  Plaintiff was immediately sent to FMC-Rochester to serve his sentence.

34.     Since Plaintiff's incarceration began in April 2012, Defendants have failed to properly manage Plaintiff's PKU.  Specifically, Defendants have failed to offer Plaintiff complete PKU meals, have failed to properly prepare Plaintiff's PKU meals, have failed to serve Plaintiff edible meals that have not expired, have failed to properly monitor Plaintiff's PKU diet, and have failed to offer Plaintiff access to available PKU treatment.

35.     Defendants have developed a "PKU menu" for Plaintiff.  The PKU menu consists of two meals, lunch and dinner, of PKU foods, along with standard fruits and vegetables.

36.     Defendants disregard the diet plan as written multiple times per week. Defendants fail to provide Plaintiff with items that are scheduled to be served.  In these cases, Plaintiff does not receive a full PKU meal, and is limited to one or two pieces of fruit for lunch or dinner.

37.     Despite a notice on the menu that PKU foods should not be substituted without the dietician's approval, Defendants provide substitutes on Plaintiff's diet plan without advance notice, and without the dietician's approval.

38.     The PKU foods that Defendants include on Plaintiff's PKU menu are limited to pre-packaged food items.  Defendants refuse to incorporate any PKU items that involve food preparation beyond reheating.  As a result, Plaintiff does not have access to a variety of PKU foods that are normally part of a complete PKU diet.

39.     The instructions on many of the PKU foods state that the food must be prepared using water and a stove top burner.  The kitchen at FMC-Rochester does not contain a stove top burner.  As a result, Plaintiff's meals are prepared using a microwave.

40.     The instructions on many of the PKU foods have specific measurements for water and other ingredients that must be added during food preparation.  The kitchen staff who prepare Plaintiff's food do not use measuring cups.

41.     Because the food items are prepared in the microwave and the ingredients are not measured, they lack the proper consistency.  Many of the food items that Plaintiff

receives are gelatinous or hardened, to the point where they are inedible. These items are substantially below the quality of food provided to other inmates.

42.     The PKU meals that Plaintiff receives are not prepared at the same time as food for other prisoners. Rather, Defendants prepare Plaintiff's food early, and then place it in a hot box. A hot box is a container that keeps food warm using incandescent lightbulbs. The food sits in a hot box for at least three hours prior to Plaintiff's meal.

43.     Many PKU foods cannot be heated over time because of the composition of the product. Many of the PKU foods that Plaintiff receives are hardened and dehydrated from being placed in a hot box for several hours.

44.     Plaintiff consumes a nutritional supplement to supplement his diet. The powdered supplement must be mixed thoroughly with water in order for Plaintiff to receive the full nutritional benefit of the supplement.

45.     Plaintiff receives his nutritional supplement in a paper cup with water. Plaintiff uses a plastic spoon to mix the water and supplement. Plaintiff is unable to fully mix the supplement using these tools, because the supplement becomes stuck at the bottom of the paper cup. Consequently, Plaintiff is unable to consume the full amount of the supplement at each serving.

46.     The majority of the PKU foods that Plaintiff receives have "best use by" dates printed on them. Eating food past the "best use by" date reduces the quality and nutritional value of the food.

47.     Defendants routinely provide Plaintiff with food items that are significantly past their "best use by" dates.  For example, Plaintiff received multiple items in 2015 with 2013 "best use by" dates.

48.     Plaintiff does not receive the same fruits and vegetables as other inmates because his trays are prepared separately.  Many of the fruits and vegetables that Plaintiff receives are bruised, rotten, or spoiled, to the point of being inedible.

49.     Proper monitoring of PKU involves testing of an individual's Phe level every other week.  If an individual's Phe level is above 15 mg/dl, then the individual's diet and supplements must be adjusted so that his Phe level goes down to a medically acceptable level.

50.     Defendants are testing Plaintiff's blood levels every other week.  Since his incarceration, Plaintiff's average Phe level is about 23.2 mg/dl.  Plaintiff's Phe levels have ranged from about 12.4 to 31 mg/dl.

51.     Defendants do not adjust Plaintiff's diet and supplement regimen in response to testing that demonstrates that Plaintiff's Phe levels are dangerously high and above 15 mg/dl.

52.     Individuals with PKU receive periodic magnetic resonance imaging (MRI) to monitor the progression of their disease.  Plaintiff last received an MRI in September 2011, before he was incarcerated.

53.     Plaintiff has asked Defendants to authorize an MRI to determine how his disease has progressed during his incarceration.  Defendants have repeatedly denied Plaintiff's request for an MRI.

11

54.     Plaintiff has requested limited email access so he can communicate with Dr. Dorothy K. Grange and dietician Laurie Sprietsa at Washington University in St. Louis regarding his condition and treatment.  Defendants have denied Plaintiff's request.

55.     Plaintiff has requested that he be allowed to participate in a drug trial of Kuvan, a new drug introduced to treat PKU.  BioMarin, the drug company who makes Kuvan, has informed Plaintiff's family that there would be no additional cost to the BOP to supply Plaintiff with Kuvan.

56.     In response to Plaintiff's Request for Administrative Remedy (BP-9) filed on January 30, 2015, Defendants stated that the medical staff was considering approving Plaintiff's participation in a clinical trial for Kuvan.  However, over a year later, Plaintiff has yet to receive approval for participation in the trial, and has not received Kuvan during his incarceration.

57.     As a result of Defendants' failure to provide adequate nutrition and treatment for PKU, Plaintiff has suffered both short-term and long-term damage to his health.

58.     Individuals whose Phe levels are above 20 mg/dl can experience irreversible brain dysfunction, inattentiveness, poor organization, decreased physical coordination, decreased processing speed, and, in some cases, severe cognitive deficits.

59.     Plaintiff's cognition has deteriorated since he has been incarcerated.  He is more confused and has difficultly with concentration and comprehension.

60.     Plaintiff's parents have observed changes to Plaintiff's behavior over the past four years.  Plaintiff's parents observe that Plaintiff is more confused and has difficulty maintaining concentration during his visits with them.

61.     Plaintiff has had both short-term and long-term memory problems during his incarceration.

62.     Plaintiff's physical coordination and dexterity have deteriorated during his incarceration.

63.     Plaintiff has developed a skin rash on his lower shin that has persisted for several months.  Skin rashes are a symptom of PKU not being adequately treated.

64.     Plaintiff has experienced emotional harm because of Defendants' actions, including increased feelings of depression and anxiety, knowing that his serious medical condition continues to go untreated.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE EIGHTH AMENDMENT OF THE UNITED STATES

65.     Plaintiff Brent Woody re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

66.     By their policies, practices and acts, Defendants are violating the rights of Plaintiff to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution.

67.     Defendants have custody over Plaintiff and control Plaintiff's diet.

68.     Given Plaintiff's serious health condition, Defendants have prepared and provided Plaintiff with a nutritionally inadequate diet that presents an immediate and long-term danger to his health, and has caused Plaintiff's health to suffer.

69.     Defendants have been aware of the consequences of failing to provide Plaintiff with a nutritionally adequate diet since before his incarceration began.

70.     Defendants have been aware of the adverse symptoms that Plaintiff has experienced due to elevated Phe levels while he has been in Defendants' custody.

71.     Defendants have deliberately refused to take reasonable actions to correct Plaintiff's diet to reduce his Phe levels to a medically acceptable range.

72.     By providing him with a nutritionally inadequate diet and inadequate care, Defendants are acting with deliberate indifference to the serious medical needs of, and the substantial risk of serious harm to, Plaintiff.

73.     As a direct and proximate cause of the Defendants' actions, and their failure to act, Plaintiff has suffered and continues to suffer harm.

74.     Defendants' conduct constitutes an ongoing and continuous violation of the Eighth Amendment.  As a result, Plaintiff is entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF SECTION 504 OF THE FEDERAL REHABILITATION ACT
## 29 U.S.C. § 794

75.     Plaintiff Brent Woody re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

14

76.     The Federal Bureau of Prisons is a subdivision of the United States Department of Justice.  The Federal Bureau of Prisons and its employees are therefore covered by Section 504 of the Federal Rehabilitation Act., 29 U.S.C. § 701 et. seq.

77.     Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . .  shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination  . . . under any program or activity conducted by any Executive agency . . . ."  29 U.S.C. § 794(a).

78.     Section 504 requires Defendants to make reasonable accommodations to ensure that Plaintiff has meaningful access to the benefits that it offers to all inmates.

79.     By failing to provide Plaintiff with a nutritionally adequate diet, Defendants have denied Plaintiff meaningful access to the benefit of food that they offer to all inmates, in violation of the Federal Rehabilitation Act, 29 U.S.C. § 794 and its implementing regulations, 28 C.F.R. § 39.101 et. seq.

80.     By providing Plaintiff with food that is of substantially lower quality than the food provided to other inmates, Defendants have denied Plaintiff meaningful access to the benefit of food that they offer to all inmates, in violation of the Federal Rehabilitation Act, 29 U.S.C. § 794 and its implementing regulations, 28 C.F.R. § 39.101 et. seq.

81.     As a direct and proximate cause of the Defendants' actions, and their failure to act, Plaintiff has suffered and continues to suffer harm.

82.     Defendants' conduct constitutes an ongoing and continuous violation of Section 504 of the Rehabilitation Act.  As a result, Plaintiff is entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs.

**RELIEF**

WHEREFORE, Plaintiff prays for relief as follows, including but not limited to:

1.     A declaration that Defendants' conduct as alleged herein has violated and continues to violate the Eighth Amendment of the United States Constitution and Section 504 of the Rehabilitation Act.

2.     An Order and Judgment enjoining Defendants from violating the Eighth Amendment of the United States Constitution and Section 504 of the Rehabilitation Act, and requiring Defendants to develop and implement a remedial plan to remedy such failures.  At a minimum, Plaintiff requests that the Court issue an Order for Injunctive Relief that:

>     a.     Requires Defendants to serve a PKU appropriate diet to Plaintiff that consists of two meals a day of adequately prepared foods. Specifically, Plaintiff requests that the Court issues an Order that requires Defendants to:
>
>     i.     Use a stove top burner and measuring cups for preparing meals;
>
>     ii.    Prepare meals at the time that they are eaten rather than using a hot box;

iii.    Prepare PKU meals that are not pre-packaged, including PKU food items such as PKU baking mix, PKU bread mix, PKU waffle mix, PKU pancake mix and different types of PKU pasta.

b.    Requires Defendants to adequately monitor and treat Plaintiff's PKU.  Specifically, Plaintiff requests that the Court issues an Order that requires Defendants to:

i.    Adjust Plaintiff's PKU diet whenever his Phe levels are above a medically acceptable level;

ii.    Perform periodic MRIs to monitor the progress of Plaintiff's disease;

iii.    Allow Plaintiff limited email access so that he may communicate with his doctor and dietician in St. Louis;

iv.    Approve Plaintiff's participation in a trial study of Kuvan, a new drug to treat PKU, and other trial studies as they become available.

c.    Requires Defendants to take other appropriate corrective actions, including, but not limited to, training Defendants' staff in proper food preparation and management of PKU, which will ensure that Defendants fully comply with its obligations under the Eighth Amendment and Section 504 of the Rehabilitation Act.

3.     An Order requiring Defendants to pay Plaintiff's statutory attorneys' fees and expenses.

4.     Such further relief as the Court determines is just and reasonable.

Dated: _August 1, 2016_                Respectfully submitted,

MID-MINNESOTA LEGAL AID
MINNESOTA DISABILITY LAW CENTER


s/Steven C. Schmidt_____
Steven C. Schmidt
Attorney ID# 392442
Telephone/Fax:  (612) 746-3620
sschmidt@mylegalaid.org


s/Barnett I. Rosenfield_____
Barnett I. Rosenfield
Attorney ID# 212854
Telephone/Fax:  (612) 746-3758
brosenfield@mylegalaid.org

430 First Avenue North, Suite 300
Minneapolis, MN  55401


ATTORNEYS FOR PLAINTIFF